WILLIS, J., concurring, in part, and dissenting, in part.
I concur in the affirmance of Bishop’s obstruction of justice conviction. I dissent from the affirmance of his habitual offender conviction.
Our review of Bishop’s habitual offender conviction is controlled by Reed v. Commonwealth, 15 Va.App. 467, 424 S.E.2d 718 (1992). Pursuant to Code § 46.2-355, Reed was served with a show cause order requiring him to appear before the circuit court to show cause why he should not be determined to be an habitual offender. In disregard of that order, Reed did not appear. An order was entered adjudging him an habitual offender, revoking his driving license, and ordering him not to drive. Reed was not served or otherwise notified of that order.
Reversing Reed’s conviction under Code § 46.2-357, we held that the constructive notice of his adjudication, based upon his joinder in the ex parte judicial proceeding, was insufficient to support his criminal conviction. We held:
Code §§ 46.2-351 et seq., by requiring that one “be direct[ed] ... not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth” before such person can be guilty of driving a vehicle “while the order of the court prohibiting such operation remains in effect,” requires proof of actual knowledge that one has been declared to be an habitual offender before one can be convicted of driving after having been so declared and ordered not to drive.... [T]he provi *262 sions in Code § 46.2-355 that the order direct the person not to drive and to surrender his license, and the further directive that a copy of the order be mailed to the defendant if it appears he was not present, bespeak a requirement that the person receive actual notice of having been declared an habitual offender and directed not to drive before he can be convicted and imprisoned for driving after having been declared an habitual offender.
Id. at 471, 424 S.E.2d at 720. See also Rose v. Commonwealth, 37 Va.App. 728, 733, 561 S.E.2d 46, 49 (2002), rev’d, 265 Va. 430, 578 S.E.2d 758 (2003). Reed remains good law. See, e.g., Saunders v. Commonwealth, 48 Va.App. 196, 206, 629 S.E.2d 701, 705-06 (2006).
The notice requirement prescribed by Reed in the context of an inter partes judicial proceeding applies with at least equal force in the context of an ex parte administrative proceeding, the case here.
The entry on the DMV transcript notes “REVOCATION” issued “1997/04/28 EFFECTIVE: 1997/05/28 FOR H.O. DETERMINATION PROCESS.” Although the wording is confusing, under the law at the time, any such revocation would have been pursuant to an ex parte administrative revocation of Bishop’s license by the Commissioner of DMV. The next two entries are:
NOTIFIED: 2001/03/10 BY LAW ENFORCEMENT
ORDER DELIVERY DATE: ORDER MAILED
The first entry does not state the means or substance of notification or identify the person, agency or process termed “Law Enforcement.” The next line provides no proof of notice. Therefore, the DMV transcript falls short of proving the notice required by Reed.
The majority recites that Bishop “concedes he received the notice from ‘law enforcement’ in 2001.” It bases its finding of this concession on defense counsel’s argument at the conclusion of the evidence.
*263 At trial, appellant’s attorney attempted to interpret the notations on the DMV transcript and stated:
[The DMV transcript] will tell you that the revocation which occurred April 28, 1997, I’m sorry, April 28, 1997, that he was notified for the H.O. determination, that is the habitual offender determination by law enforcement. It doesn’t actually say he was notified after he was declared habitual offender. I think that is an important distinction.
He was notified of the process whereby he was going to be waived or where he was going to be adjudicated habitual offender so that he would know that it was going to occur, but it doesn’t actually say he was notified having been adjudicated an habitual offender.
And I would suggest to the Court that under the Reed case, and I have copies right here. First of all, actual notice is required and I would suggest to the Court we don’t even see constructive notice on this record. We know he was notified that there was going to be a termination, but we don’t see in the record that he was going to be notified that he was determined habitual offender. But I would suggest without notice we cannot sustain a conviction
In his petition, appellant’s attorney wrote:
The DMV record in this case has two notations, the interpretation of which is the critical issue here. First, the record indicates that on April 23, 1997, Appellant was “DETERMINED” to be an habitual offender by DMV. The record does not show whether or not Appellant was ever notified of this determination. Immediately below this notation is an indication that there existed a “REVOCATION” issued on April 28,1997 and effective on May 28,1997. The notation then reads: “FOR HO DETERMINATION PROCESS.” That same entry reflects that an order was mailed and that Appellant received notification from law enforcement on March 10, 2001.
The DMV record is ambiguous on its face, however, a point which Appellant’s trial counsel noted. It indicates that Appellant was notified of something by law enforce *264 ment, but not as to what that something was. The most clear reading of the DMV record, and the only one supported by the plain language, is that Appellant was notified of the “HO DETERMINATION PROCESS,” not that he was notified that he was or had been declared an habitual.
(Emphasis added.)
Appellant’s attorney’s representations were not evidence. They were not a stipulation of evidence intended to limit the scope of required proof. They were argument as to what, if anything, could be concluded from the evidence. This argument must be considered in tato. Bishop cannot be charged with what his counsel didn’t say.
Moreover, in recognizing that appellant received some notice on March 10, 2001, appellant’s attorney did not concede the contents of that notice. Instead, he argued that the record was unclear as to what notification appellant received from the unidentified “law enforcement.” To comply with Reed, the Commonwealth had the burden of proving through testimony or documents from “law enforcement” the details and circumstances of notification. This the Commonwealth failed to do.
The majority notes that the statutorily prescribed “process” is a review procedure post-determination. It holds that defense counsel should have known this and that his concession of notice of the process must acknowledge notice of the underlying habitual offender determination. In my view, this approach transgresses the appropriate standard of review. Knowledge of law is one thing. Proof of fact is another. We cannot substitute our knowledge of the statutory scheme, or our hopeful attribution of such knowledge to counsel, for proof that Bishop was in fact given the notice required by Reed.
I would reverse Bishop’s habitual offender conviction and order that charge dismissed.